IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Bobby Larue Jackson, | ) | C/A No. 0:09-2931-JMC-PJG |
|                     Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of Social Security, | ) | |
|                     Defendant. | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Bobby Larue Jackson ("Jackson"), brought this action pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

In May 2006, Jackson applied for Supplemental Security Income ("SSI") and DIB.[1] Jackson alleged disability since February 28, 2005 due to aortic aneurysm surgery with heart valve replacement and a subsequent stroke. (Tr. 135.) Jackson was found to be disabled as of May 1, 2006—the month he had his stroke—and was awarded SSI benefits. Jackson's DIB application, however, was denied initially and on reconsideration because his insured status for purposes of entitlement to DIB benefits expired December 31, 2005. Jackson requested a hearing before an administrative law judge ("ALJ"). A hearing was held on February 10, 2009 at which Jackson

---

[1] Jackson had previously applied for SSI and DIB in March of 2005. These applications were denied in June 2005, and the decision was not appealed.



appeared and testified and was represented by John William Parker, III, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision dated May 11, 2009 finding that Jackson was not disabled prior to his date last insured. (Tr. 8-15.)

Jackson was born in 1951 and was fifty-eight years old at the time of the ALJ's decision. (Tr. 13.) He has a high school education and has past relevant work experience as a construction worker, route salesman, and light bulb packager. (Tr. 12, 41, 143-48.)

The ALJ made the following findings and conclusions:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2005, but not thereafter.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of February 28, 2005 through his date last insured of December 31, 2005 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: residuals secondary to aortic valve replacement and anxiety (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform unskilled light work as defined in 20 CFR 404.1567(b) except no climbing of ladders, ropes or scaffolds and in an environment free from concentrated exposure to humidity and temperature extremes.

   * * *

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

   * * *

7. The claimant was born on [REDACTED], 1951 and was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured. (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 84-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

\* \* \*

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 28, 2005, the alleged onset date, through December 31, 2005, the date last insured (20 CFR 404.1520(g)).

(Tr. 10-14.)

Jackson filed a request for Appeals Council review which was denied on September 8, 2009, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) Jackson filed this action on November 9, 2009.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent his from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829

F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

### ISSUES

Jackson raises the following issues for this judicial review:

I.  The ALJ Erred in Failing to Find Mr. Jackson Disabled Prior to December 31, 2005, his Date Last Insured.

II. Substantial Evidence Does Not Support the ALJ's Adverse Credibility Finding.

(Pl.'s Br., ECF No. 8.)

### DISCUSSION

**A.    Existence of Disability Prior to Date Last Insured**

As described above, Jackson was found to be disabled as of May 1, 2006. Jackson argues that the ALJ erred in failing to find him disabled prior to December 31, 2005—his date last insured. Specifically, Jackson argues that many of his impairments, including his cerebral vascular accidents ("CVAs"), syncopal episodes, and transient ischemic attacks ("TIAs"), as well as effects secondary to aortic valve replacement, existed prior to his date last insured.



In this case, the ALJ noted that Jackson was admitted to the hospital on March 1, 2005 due to involvement in a motor vehicle accident in which Jackson reported a syncopal episode. (Tr. 11, 273.) The ALJ noted that Jackson successfully underwent aortic valve replacement surgery, was placed on Coumadin therapy, and that his blood had reached therapeutic levels prior to his discharge from the hospital on March 12, 2005. (Tr. 11, 192-93.) The ALJ found that the medical records indicated that Jackson's incision from the surgery healed well and that he was instructed during follow-up visits on the importance of following his Coumadin therapy. (Tr. 11, 203-08.) The ALJ noted that Jackson's August 8, 2005 appointment—Jackson's last appointment prior to his date last insured—indicated that he was much improved, and the doctor instructed him to increase his activity slowly. (Tr. 11, 271.) The ALJ observed that Jackson was hospitalized on May 27, 2006 after suffering a stroke, and that an MRI revealed that he had probably had a major infarction a few weeks earlier. (Tr. 11, 236.)

Jackson argues that his disabling conditions existed prior to his date last insured. Jackson asserts that his May 2006 hospitalization records indicate a "recurrent history of CVAs and near syncopal episodes." (Pl.'s Br. at 6, ECF No. 8 at 6.) Additionally, in support of his argument that the CVAs were related to the aortic valve replacement, Jackson points to a June 2, 2006 hospital medical record in which Dr. James S. Garner, IV opined that "[i]t is postulated that []he is probably still having minor TIAs due to the prosthetic aortic valve and the fact that he has not been taking his Coumadin." (Tr. 236.) In addressing this argument, the ALJ states as follows:

> While it is noted that the claimant began receiving supplemental security income benefits as of May 1, 2006, because of a cerebrovascular accident, there is no evidence that he had any significant limitations or restrictions prior to December 31, 2005, the date the claimant was last insured for the purposes of Title II benefits, which would preclude all work activity on a sustained basis. It is noted the claimant had an aortic valve replacement in March 2005; and although the claimant has



received treatment, that treatment has been essentially routine and/or conservative in nature.

(Tr. 12.)

While Jackson may point to selective evidence that could demonstrate the existence of an impairment, he has failed to point to any evidence that he suffered from any limitations or restrictions prior to his date last insured. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (indicating that a diagnosis is insufficient to establish disability as "[t]here must be a showing of a related functional loss"). Accordingly, Jackson has failed to demonstrate that the ALJ's decision was not supported by substantial evidence. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

**B.     Jackson's Credibility**

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. In this matter only the second step is at issue,[2] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the

---

[2] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers." Id.

In this case, the ALJ found that Jackson's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (Tr. 12.) Contrary to Jackson's argument, in reaching this conclusion, the ALJ expressly considered several factors in discounting the credibility of Jackson's subjective complaints, including not only Jackson's testimony but also the medical and nonmedical evidence. Jackson argues that the ALJ did not provide specific examples of the alleged inconsistencies of Jackson's testimony compared to the medical evidence and points to the September 19, 2006 report of consultative examiner, Dr. Susan Tankersley, who noted "significant dysfunction of [Jackson]'s right hand," Jackson's inability to write with that hand, and that Jackson could not oppose his thumb on his right hand to any fingers. (Tr. 274, 277.) Jackson argues that this statement supports his testimony that he had suffered with his right hand for some time. However,

the ALJ's order clearly states that although Jackson testified at the February 2009 that he was now unable to lift anything with his right hand, the only correspondence from Dr. R. Joseph Healy, Jackson's neurologist, in response to the ALJ's subpoena duces tecum indicated that Jackson was last seen in August 1998 and that his office no longer had Jackson's records. (Tr. 12, 343.) Additionally, the ALJ summarized the findings of Dr. Tankersley's evaluation but stated that her opinion could not be given controlling weight in the determination of the claimant's residual functional capacity because her evaluation occurred in September 2006—after Jackson's stroke and after his date last insured. The ALJ also considered the February 4, 2009 statement of Dr. Ganga Mathi, who opined that Jackson would not be capable of more than sedentary exertion because of neuropathy in his hands. The ALJ stated that he likewise could not give this opinion controlling weight as "there is no evidence to substantiate Dr. Mathi's opinion prior to the claimant's date last insured." (Tr. 13.)

Upon a thorough review of the record as a whole, the court finds that the ALJ conducted a proper analysis in determining the credibility of Jackson's subjective complaints. See Craig, 76 F.3d at 595; Gowell, 242 F.3d at 796. While Jackson may point to selective medical evidence in the record in support of his argument, such evidence does not render the ALJ's decision unsupported. In determining that Jackson's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible, the ALJ considered Jackson's subjective complaints in conjunction with the medical evidence from the relevant time period. Accordingly, Jackson has failed to demonstrate that the ALJ erred in finding that Jackson's subjective complaints are inconsistent with the record. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with

available evidence"). Moreover, the court may not substitute its judgment for the ALJ's. See Craig, 76 F.3d at 589; Hays, 907 F.2d at 1456. Based on the record as a whole, the court cannot say that the ALJ's determination as to Jackson's credibility is not supported by substantial evidence.[3]

## RECOMMENDATION

The record does not show that Jackson was disabled as of his date last insured. He has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

*[signature]*
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 7, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[3] Jackson also summarily argues that the ALJ erred in not finding certain impairments suffered by the claimant to be severe. (Pl.'s Br. at 7, ECF No. 8 at 7.) The court finds that Jackson has failed to support this argument and therefore has not demonstrated that the ALJ's decision on this point was not supported by substantial evidence or was controlled by an error of law.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).